CAROLYN J. DINGLER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Dingler v. Commissioner
Docket No. 38147-87
United States Tax Court
T.C. Memo 1990-411; 1990 Tax Ct. Memo LEXIS 428; 60 T.C.M. (CCH) 395; T.C.M. (RIA) 90411; August 6, 1990, Filed Decision will be entered for the respondent. Mark S. Cambiano and Paul Johnson, for the petitioner. Rebecca A. Dance, for the respondent. SWIFT, Judge. SWIFT
MEMORANDUM FINDINGS OF FACT AND OPINION By a timely notice of deficiency, respondent determined deficiencies and additions to tax in petitioner's 1983 and 1984 Federal income taxes as follows: Additions to Tax, I.R.C. Secs. [1]
Year
Deficiency
6653(b)(1)
6653(b)(2)
6654
6661
1983
$ 21,946.54
$ 10,972.77
* $ 1,221.37
$  5,486.39
1984
64,982.02
32,491.01
**
-
16,245.51
*429 The issue for decision is whether petitioner received unreported embezzlement income in 1983 and 1984 in the amounts of $ 40,625 and $ 139,606, respectively. On brief, petitioner concedes the additions to tax if the Court determines that petitioner received the embezzlement income. FINDINGS OF FACT Some of the facts have been stipulated and are so found. At the time she filed her petition, petitioner resided in Little Rock, Arkansas. During 1983 through October 2, 1984, petitioner was employed as a secretary by Frank Fletcher & Associates, Inc. (hereinafter "FFA"). FFA was a closely held corporation owned by Frank Fletcher. FFA served as a manufacturer's representative for various *430 companies. It received commission income based on sales of products manufactured by the companies it represented. The offices of FFA were located in Frank Fletcher's home in Little Rock, Arkansas. Frank Fletcher also owned and apparently managed out of his home office a number of other businesses and investments, and he received and reported income in excess of $ 1 million for 1984 for Federal income tax purposes with respect to these various businesses and investments. Petitioner started working full time for FFA in 1980. She was Mr. Fletcher's personal secretary. She opened the mail and generally supervised the office. With the assistance of another secretary, petitioner each day would organize and copy the checks received in the mail, and petitioner generally would then go to the bank and deposit all of the checks received relating to FFA and to Mr. Fletcher's other investments into FFA's bank account or other bank accounts owned by Mr. Fletcher. No checks relating to business receipts were to be cashed by petitioner. On those days when petitioner was absent, the checks would be held until petitioner returned, and she then would take the accumulated checks to the bank. *431 During 1983 and 1984, however, a number of the checks made out to FFA and to Mr. Fletcher were not deposited into FFA's bank account or to other bank accounts owned by Mr. Fletcher. Rather, on these checks Mr. Fletcher's signature or an endorsement on behalf of FFA was either forged, typed, or placed on the checks using a signature stamp. The checks were cashed at the bank by petitioner, but the check proceeds were not turned over to FFA, to Mr. Fletcher, nor to any of Mr. Fletcher's other businesses. In 1983 checks in the total amount of $ 40,625 and in 1984 checks in the total amount of $ 139,606 were cashed and not deposited into the appropriate FFA bank account, a bank account owned by Mr. Fletcher, or otherwise turned over to Mr. Fletcher. Petitioner often cashed checks at the bank made out by FFA to Mr. Fletcher to reimburse him for business travel expenses he had incurred. The proceeds of these checks were delivered by petitioner to Mr. Fletcher. FFA's books were kept and its Federal income tax returns were prepared using the cash method of accounting. FFA's accountants determined the income FFA received each month from the monthly bank statements reflecting the deposits *432 made into FFA's bank account. Beginning in the late summer of 1984, petitioner frequently arrived late for work or was absent from work. On September 26, 1984, petitioner arrived at the office at 1:00 p.m. To explain her late arrival, petitioner gave Mr. Fletcher a note purportedly written and signed by a local dentist stating that she had been at the dentist that morning. Mr. Fletcher contacted the dentist and was told that the note was a forgery and that petitioner was not a patient of the dentist. Mr. Fletcher then informed petitioner of her termination as soon as a new secretary could be hired and trained. Continuing to work on a part-time basis, petitioner trained the new secretary for about two weeks. Petitioner's last day of employment with FFA was on October 2, 1984. Apparently in late September of 1984, one of FFA's salesmen informed Mr. Fletcher that he had not received a commission to which he was entitled. Mr. Fletcher reviewed the records of FFA and verified that the sale with respect to which the commission was claimed had occurred, that the check in payment therefor had been received by FFA, and that the check had been cashed. He also determined that the check *433 had not been deposited into FFA's bank account, which latter fact explained the salesman's failure to receive the commission check. Upon discovery in early October of 1984 of the above apparent misappropriation of funds, Mr. Fletcher and other officers of and accountants for FFA reviewed the records of FFA and met with officers of the bank at which FFA had an account. They discovered that checks made out to FFA totaling approximately $ 181,000 had not been deposited into FFA's bank account but had been cashed and misappropriated. During the investigation of FFA's records, Mr. Fletcher informed officers of FFA's bank not to allow petitioner to deposit or cash any checks made out to FFA. On October 9, 1984, petitioner attempted to cash at the bank two checks made out to FFA. One check was payable to FFA in the amount of $ 2,951.47, and the other check was payable to Frank Fletcher in the amount of $ 186.69. Bank employees telephoned the police, and petitioner was arrested and charged with theft of property by deception under Arkansas Statutes Annotated section 41-2203 (1977). During the course of the ongoing criminal investigation concerning the misappropriation of FFA's funds, *434 it was determined that a check made payable to FFA in the amount of $ 8,672.49 had been cashed and deposited into petitioner's personal checking account. On the back of this check, FFA and the FFA account number originally had been typed, but after the reference to FFA and to FFA's account number had been partially scratched out and petitioner's personal bank account number written on the back of the check, petitioner had deposited the check into her personal account. The criminal charges against petitioner resulted in a plea of nolo contendere to theft of property by deception. Petitioner was sentenced to five years' probation, payment of a $ 500 fine and court costs. Petitioner was not ordered to pay restitution. Neither Mr. Fletcher, FFA, nor the bank sued petitioner to recover any portion of the misappropriated funds. The bank eventually reimbursed FFA $ 40,000 of its losses. During 1983 and 1984, petitioner received total salary from FFA of $ 15,486 and $ 12,350, respectively. In 1983, petitioner deposited a total of approximately $ 11,000 into her personal bank account. In 1984, petitioner deposited approximately $ 14,000 into her personal bank account. For 1983, petitioner *435 did not file a Federal income tax return. For 1984, petitioner filed a timely Federal income tax return reporting total income from FFA of $ 12,350. On audit, respondent, among other things, determined that petitioner for 1983 had unreported salary income from FFA in the amount of $ 15,485.91 and unreported embezzlement income in the amount of $ 40,625.12. For 1984, respondent, among other things, determined that petitioner had unreported embezzlement income in the amount of $ 139,606.34. OPINION Under section 61, gross income includes "all income from whatever source derived," including income from embezzlement. , citing ; . For Federal income tax purposes, embezzlement income is included in gross income in the year the funds are misappropriated. . Petitioner does not deny that she cashed a number of FFA checks. She contends, however, that Mr. Fletcher authorized and instructed her to do so, and that she delivered *436 all of the check proceeds to Mr. Fletcher as per his instructions. Petitioner argues that Mr. Fletcher used the check proceeds to purchase cocaine, to gamble, and to pay the wages of illegal aliens he employed. Petitioner further contends that the $ 8,672.49 check payable to FFA that she deposited into her personal bank account was a gift Mr. Fletcher gave her for locating another check that had been misplaced in the office. Petitioner and respondent each called witnesses that in some degree or another corroborated parts of their respective contentions in this case. The weight of the evidence, however, establishes that petitioner misappropriated the funds in question. Based on the evidence before us and on the findings of fact set forth above, we conclude that petitioner misappropriated funds of FFA when she cashed checks made payable to FFA and to Mr. Fletcher personally. In spite of the conflicting testimony, the evidence is convincing that petitioner, without authorization, cashed and retained substantial funds of FFA and of Mr. Fletcher. Respondent's determinations of petitioner's unreported income are sustained. In light of petitioner's concession regarding the additions *437 to tax, respondent's determinations as to the additions to tax also are sustained. Decision will be entered for the respondent. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
*. 50 percent of the interest due on $ 19,959.34.↩
**. 50 percent of the interest due on $ 64,982.02.↩